Hinton R. JOHNSON, Jr., and Doris L. Johnson, his wife, Plaintiffs,

v.

**COMMISSIONER OF INTERNAL REVENUE and the United States of America, Defendants.**

No. 79–172–Civ–J–M.

United States District Court,
M. D. Florida,
Jacksonville Division.

Findings of Fact and Conclusions of Law March 15, 1979.

On Motion for Attorney's Fees
April 19, 1979.

Fred M. Cone, Jr., Peter W. Mettler, Stephen F. Story, Culverhouse, Tomlinson, Mills, Anderson & Cone, Jacksonville, Fla., for plaintiffs (taxpayer).

Gerald B. Leedom, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MELTON, District Judge.

This cause is before the Court on a complaint filed on February 23, 1979, to determine the reasonableness and appropriateness of a jeopardy assessment imposed upon the plaintiffs by the Internal Revenue Service (hereinafter "the Service") on December 20, 1978. *See* 26 U.S.C. § 7429(b) (1976). The Service imposed the jeopardy assessment for two reasons: first, because it appeared that the plaintiffs' continued solvency was questionable; and second, because it appeared that the plaintiffs had undertaken to conceal certain of their assets from the Florida authorities and, presumably, from the Service. Under 26 U.S.C. § 7429(b) (1976), it is this Court's duty to determine whether the imposition of the assessment was reasonable and, if so, whether the amount assessed was appropriate. In this case, the plaintiffs do not strongly challenge the amount of the assessment, but they do contend that imposing the assessment was unreasonable. After hearing the evidence adduced, the Court has concluded that the government has not met its burden of persuasion on the reasonableness issue, *see id.* subsec. (g)(1), and hereby enters its findings of fact and conclusions of law to that effect.

### FINDINGS OF FACT

1. On December 20, 1978, a jeopardy assessment totaling $148,344.42 was imposed upon the plaintiffs pursuant to 26 U.S.C. § 6861 (1976). The basis for this jeopardy assessment, set forth by the District Director of the Internal Revenue Service, was that the plaintiffs were attempting to place their assets beyond the reach of the government and that their financial solvency was becoming imperiled, thereby tending to prejudice or render ineffectual collection of income tax for the tax years 1975 and 1976. A Notice of Federal Tax Lien was filed on the same date with the clerks of the circuit courts of Suwannee, Lafayette and Calhoun counties, Florida.

2. On January 9, 1979, the plaintiffs, through counsel, made timely request for administrative review of the action taken by the Service, a procedure authorized by 26 U.S.C. § 7429(a)(2) (1976). Representatives of the Secretary of the Treasury redetermined that the making and the amount of the jeopardy assessment were reasonable and appropriate under the circumstances. *See* 26 U.S.C. § 7429(a)(3). However, it was agreed by representatives of the Secretary of the Treasury that, on

the basis of the facts presented, the collection on the jeopardy assessment should be stayed.

3. At the time of the jeopardy assessment, the taxpayers owned the following assets:

(a) Real property in which the taxpayers have equity in excess of $350,000.

(b) Contracts for deeds from sales of real estate that generated over $10,000 in cash flow for each of the two years audited by the Service.

(c) A grain business that the taxpayers sold in December of 1978 after receiving a release from a federal tax lien, which arose from the filing of the jeopardy assessment.

(d) An undetermined number of motor vehicles.

4. *The plaintiffs' insolvency.* The Service's only direct testimony on the question of the plaintiffs' insolvency came from Special Agent Gary M. Taylor of the Service's Tallahassee office. Agent Taylor's testimony on this issue was highly conclusory. In fact, Agent Taylor admittedly took into account the plaintiffs' projected tax deficiency for 1975 and 1976, with accrued interest, in forming his judgment that the plaintiffs' continued solvency was questionable. To use the anticipated tax deficiency in evaluating a taxpayer's solvency apparently contravenes the Service's own operating manual, specifically Part IV—Audit § 4584–1 thereof. While this does not of course dispose of the fact question of the plaintiffs' insolvency, it does to some extent impeach Agent Taylor's conclusions on the matter. On the other hand, the plaintiffs' evidence strongly tended to indicate present solvency. See Finding of Fact 3, *supra*; Plaintiffs' Exhibit 8. On the evidence before this Court, the Service has failed to show by a preponderance of the evidence that the plaintiffs' solvency is presently imperiled.

5. *The plaintiffs' concealment of assets.* Special Agent Taylor testified that in December of 1978 he became concerned that the plaintiffs might be concealing their assets. This concern apparently derived from conversations with Robert L. Leonard, the sheriff of Suwannee County, Florida. Sheriff Leonard told Agent Taylor that he had attempted to levy against certain vehicles owned by the plaintiffs and had been unable to locate the vehicles; he further expressed an opinion that the plaintiffs had themselves concealed the vehicles. As further evidence on the concealment issue, Agent Taylor noted that the plaintiffs sold their grain business in December of 1978, and that they had offered for sale two sizeable tracts of land. On cross-examination, however, Agent Taylor admitted that no concealment of assets as such was involved in the sale of the grain business or land, and that the unlocated vehicles were the chief basis for his inference that concealment of assets was occurring. He also revealed that Service personnel did not themselves attempt to locate the vehicles in question.

Even if the Court were to consider Sheriff Leonard's affidavit as probative of the truth of the matters asserted therein, it could not conclude that the greater weight of the evidence favors a finding that these plaintiffs were concealing their assets. The unlocated vehicles appear to represent a relatively small fraction of the plaintiffs' estate, and there is no evidence before this Court to indicate that any other assets might be concealed. And even if hearsay evidence is admitted for the truth of the matter, it is generally less probative before this Court than live testimony. In fact, the primary conclusion in Sheriff Leonard's affidavit—concealment of the vehicles—comes before this Court as double hearsay, since the affidavit states that "[a] Deputy from this office has made numerous observations of the [plaintiffs'] residence/business area and has failed to locate any of the unlocated items." Putting aside the tautology—and the Court recognizes what Sheriff Leonard meant to say—the Service's evidence before this Court is simply too thin to carry the Service's burden of persuasion on the concealment issue.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over these proceedings pursuant to 26 U.S.C. § 7429(b)

**464**

(1976) and 28 U.S.C. §§ 1340 and 1346(a)(1) (1976).

■ 2. Section 7429(b), entitled "Judicial Review", contemplates that a summary proceeding be conducted in the federal district court for the purpose of an independent determination as to the reasonableness of the imposition of a jeopardy assessment and appropriateness of the amount of this assessment.

3. Section 7429(b) does not contemplate that this Court attempt to determine the ultimate tax liability. The instant proceeding is unrelated substantively and procedurally to any subsequent action for refund brought in a federal district court to determine the correctness of the tax liability.

■ 4. In making the redetermination required by § 7429(a)(3), the Service is not limited to a consideration of the information available on the assessment date, but may take into account information that subsequently becomes available. Similarly, this Court, in making its independent determination, may take into account not only information available to the Service on the assessment date, but also any other information that bears on the issues before it. *See* S.Rep.No.94–938, p. 365; U.S.Code Cong. & Admin.News 1976, p. 2897.

■ 5. The Service, in making the jeopardy assessment against the plaintiffs on December 20, 1978, in an amount totaling $148,344.42, acted unreasonably under the circumstances presented within the meaning of 26 U.S.C. § 7429(b)(2)(A). The Service has failed to meet the burden of proof prescribed in subsection (g)(1) of that statute. This burden requires the Service to prove the reasonableness of their assessment by a preponderance of the evidence. *See* House Conf.Rep.No.94–1515, p. 485.

■ 6. Since the Court has found that the Service failed to meet its burden of proof as to the reasonableness of the jeopardy assessment, the jeopardy assessment must be abated. 26 U.S.C. § 7429(b)(3). It is therefore unnecessary for the Court to review the appropriateness of the amount of the jeopardy assessment.

For the foregoing reasons, it is

ADJUDGED:

1. That the jeopardy assessment imposed upon the plaintiffs on December 20, 1978, be abated.

2. That the costs of this action be taxed to the defendant.

## ON MOTION FOR ATTORNEYS' FEES

This cause is before the Court on the plaintiffs' motion for assessment of attorneys' fees and the defendants' objection thereto. The plaintiffs initially brought this case to seek a judicial determination of the reasonableness and appropriateness of a jeopardy assessment imposed upon the plaintiffs by the defendant, Internal Revenue Service, under 26 U.S.C. § 6861 (1976). Under the statutory procedure set forth in 26 U.S.C. § 7429(b) (1976), the Court received evidence and on March 15, 1979, issued its findings and conclusions holding that the imposition of the jeopardy assessment was unreasonable in this case, and ordering abatement. As the prevailing party, the plaintiffs now seek to recover their attorneys' fees incurred since the inception of the jeopardy assessment. This would include all administrative proceedings before the Internal Revenue Service under 26 U.S.C. § 7429(a) (1976), as well as all proceedings before this Court under subsection (b) of that statute. In support of their motion, the plaintiffs rely on the Civil Rights Attorney's Fees Award Act of 1976, now codified at 42 U.S.C. § 1988 (1976).

■ In pertinent part, section 1988 provides that

[i]n . . . any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Since the taxpayer-plaintiffs are undeniably the "prevailing party" in this cause, the

only question before this Court is whether the instant action represents a "civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code" within the meaning of section 1988. The government's position is that the statute is limited by its own terms to litigation in the United States Courts in which the United States is the party plaintiff. The plaintiffs argue that the "civil proceeding" language in section 1988 contemplates a category of cases broader than actual in-court litigation; that the jeopardy assessment procedure of 26 U.S.C. § 6861 (1976) is a civil proceeding under section 1988, initiated by the Internal Revenue Service "by or on behalf of the United States of America"; that the judicial review procedure of 26 U.S.C. § 7429(b) (1976) must be viewed as a necessary adjunct of the jeopardy assessment proceedings; and that therefore this Court, in connection with a section 7429(b) review, may award the taxpayer-plaintiff attorneys' fees incurred in the overall "proceeding" even though it is the taxpayer, and not the government, who necessarily initiates the section 7429(b) review in the district court.

The Court has been unable to locate any reported decisions that address the specific argument advanced by the taxpayer here. However, an analogous argument was considered and rejected by the United States Tax Court in *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977). In *Key Buick*, the taxpayer-petitioner contended that although his specific case before the Tax Court was not brought "by or on behalf of the United States", the government had instituted a "proceeding" on its own behalf, within the meaning of section 1988, when the Internal Revenue Service issued a notice of deficiency to the taxpayer. The Tax Court rejected this reading of section 1988, and held that the statute's language clearly required the government's presence before the Court as a party plaintiff in order for section 1988 to apply. A similar argument was considered and rejected by the Court of Claims in *Aparacor, Inc. v. United States*, 571 F.2d 552 (Ct.Cl.1978). Furthermore,

both *Key Buick* and *Aparacor* discounted the value of Senator Allen's post-enactment remarks, reported in 123 Congressional Record S732 (daily ed. January 14, 1977), as an indicator of the congressional intent behind section 1988's enactment. Although Senator Allen's comments do support the taxpayer's position in this case, the Court is convinced that the *Key Buick* and *Aparacor* courts properly analyzed the value of those remarks.

In addition to the cases previously discussed, several decisions have flatly held that under the clear meaning of section 1988, a taxpayer-plaintiff cannot invoke that statute to recover attorneys' fees. *See, e. g., Richmand v. United States*, 447 F.Supp. 929 (N.D.Ill.1978); *Jacobsen v. United States*, 78–1 U.S.T.C. ¶ 9323 (W.D. Tex.1978); *Haskin v. United States*, 444 F.Supp. 299 (C.D.Cal.1977); *Lieb v. United States*, 438 F.Supp. 1015 (E.D.Okl.1977); *Schulken Brothers Paper Stock Co. v. United States*, 77–2 U.S.T.C. ¶ 9712 (C.D.Cal. 1977). The one recognized exception would seem to be those cases in which the taxpayer sues and the government counterclaims, bringing the taxpayer before the court as both a plaintiff and a defendant. *See Patzkowski v. United States*, 576 F.2d 134 (8th Cir. 1978). Such an exception would not apply in this case, of course, since the government has filed no counterclaim.

Based on the authorities reviewed, this Court is convinced, and now holds, that section 1988 does not authorize this Court to award attorneys' fees in cases such as this one, where the taxpayer appears as the party plaintiff and the government appears as the defendant. The single case reaching the opposite conclusion, *Levno v. United States*, 440 F.Supp. 8 (D.Mont.1977), has been reviewed and found unpersuasive. For these reasons, it is

ADJUDGED:

1. That the plaintiffs' request for attorneys' fees will be and the same is hereby denied.

2. That the other items on the plaintiffs' bill of costs be taxed against the defendants by the Clerk.