**Richard L. NOREAULT, Plaintiff**

v.

**U.S., Defendant.**

**Civ. A. No. 85–182.**

United States District Court,
D. Vermont.

Sept. 13, 1985.

Robert B. Hemley, Gravel & Shea, Burlington, Vt., for plaintiff.

Robert F. O'Neill, Asst. U.S. Atty., Burlington, Vt., and Christopher Klieforth, Dept. of Justice, Washington, D.C., for defendant.

COFFRIN, Chief Judge:

Opinion and Order

Plaintiff, Richard L. Noreault, seeks judicial review of a termination assessment

made against him on June 3, 1985 by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6851. Plaintiff initiated this action by filing a complaint in this court on June 15, 1985 in accordance with 26 U.S.C. § 7429(b). At plaintiff/taxpayer's request and for reasonable grounds, the court extended its summary determination by forty days as provided by 26 U.S.C. § 7429(c).

This court held hearings concerning (1) the reasonableness of the termination assessment and (2) the reasonableness of the assessment amount under the circumstances. In its de novo review of the assessment, the court concludes that the government sustained its burden of proof that the imposition of the assessment was reasonable. 26 U.S.C. § 7429(g)(1). The court also concludes that the taxpayer met his burden of proof that the amount of the assessment was unreasonable. 26 U.S.C. § 7429(g)(2). For reasons stated below, this court denies plaintiff's petition regarding the reasonableness of the termination, but grants the petition regarding reasonableness of the amount of assessment.

### Findings of Fact

On May 2, 1985, Richard L. Noreault, the plaintiff in this action, was arrested and charged with distribution of cocaine. He was convicted of the charge on September 12, 1985 after a jury trial. Noreault has been continuously incarcerated since his arrest.

On June 3, 1985, pursuant to 26 U.S.C. § 6851, the IRS made a termination assessment against Richard L. Noreault for the first four months of 1985. The assessment indicated a taxable income for that period of $78,211.69 and a resulting tax of $33,930.75. On June 4, 1985, the IRS issued a Notice of Termination Assessment with accompanying worksheets, giving plaintiff notice of the assessment.

According to the testimony of Kathryn Rusiecki, the revenue agent who recommended the termination assessment, the

IRS found collection of plaintiff's 1985 taxes imperiled because the taxpayer "appear[ed] to be designing quickly to place his ... property beyond the reach of the government ... by concealing it, by dissipating it, or by transferring it to other persons." Treas.Reg. § 1.6851-1(a).[1]

Plaintiff followed appropriate procedures in exhausting his administrative remedies and then sought review in this court. 26 U.S.C. § 7429(a). Testimony at the July 25, 28 and 29, 1985 hearings demonstrated that plaintiff had on several occasions, as stated below, concealed assets from the government:

(1) At a post arrest detention hearing, the court ordered plaintiff to reveal all assets from which he could raise bail money. Noreault failed to disclose that he had approximately $34,000 cash in a safe deposit box and that he owned a partnership interest in property in Elmore, Vermont.

(2) Testimony from several witnesses demonstrates that the plaintiff conducted his alleged illegal narcotics sales on a cash basis.

(3) A real estate broker through whom plaintiff purchased three different properties during 1984, testified that Noreault paid cash for two of the properties; one property was purchased for approximately $18,000 and another for approximately $40,000. The third purchase was the partnership interest in the aforementioned Elmore, Vermont property for which Noreault and his wife contributed $8,000 cash.

(4) Upon review of the plaintiff's tax returns for years prior to 1983, the IRS had adequate reason to believe that the value of assets acquired, including those described above, exceeded reported income.

(5) Although plaintiff formally requested an extension of time for filing his 1983 tax returns, he failed to file both his 1983 and 1984 returns.

---

**1.** Revenue Agent Rusiecki testified that on one occasion she considered plaintiff's insolvency a factor in recommending the termination assessment. This court however, finds that this bald assertion did not present a sound basis for action under § 6851. Moreover, this court does not find that the revenue agent actually based her opinion on that factor.

820

**820**

(6) In explaining the sources of his income, plaintiff misrepresented that he derived income from certain stock transactions and through an automobile sales business. In fact, the evidence indicates that Noreault suffered losses through his stock transactions and investigation failed to reveal any tangible evidence of car sales.

At the time of his arrest on narcotics charges, the plaintiff possessed a gun collection, which included 55 weapons, and a substantial coin collection. The IRS valued the gun collection and accompanying ammunition at $16,787.50 and the coin collection at $4,428.88. Evidence reveals that Noreault began both of these collections many years ago and continued to supplement them until his arrest.

In determining the taxable income that Noreault received in the first four months of 1985, the IRS used a method approved by the Internal Revenue Manual. This method, called the Source and Application of Funds Method is intended to produce an amount equal to the profits that the taxpayer received through his alleged narcotic sales. Basically, the Source and Application of Funds Method traces all net income that the taxpayer receives into either bank accounts, investments, or newly acquired assets. Unless these sources can be attributed to income non-taxable in 1985, the IRS assumes the taxpayer acquired the funds in a taxable manner.

In the instant case the agent first reviewed Noreault's bank accounts for the purpose of detecting all unidentified deposits. Unidentified deposits are those deposits that do not appear to be assets transferred from other sources within the taxpayer's control. The revenue agent determined this amount to be $15,808.57. To this amount the revenue agent added the $57,474.38 value of all guns and currency seized, including the coin collection. Next, the revenue agent included a $2,822.74 bank deposit which occurred on January 9, 1985, and the $546.00 value of a Sanyo

product[2] which Noreault purchased with cash on January 16, 1985. Lastly, the revenue agent used the Internal Revenue Manual estimate of $13.00 per day living expenses for the first four months of 1985 to add $1,560.00 to the total of funds applied. In sum, the IRS calculated that Noreault had received $78,211.69 in net profit from the alleged sale of narcotics. Using this amount, the IRS made a termination assessment against plaintiff in the amount of $33,930.75 for the first four months of 1985.

Plaintiff offered evidence to the effect that if this $78,211.69 of alleged income were derived from illegal narcotics sales, then the amount of profit should be reduced by the cost of goods sold. The IRS maintains, and this court agrees, that the "Net Profit" method that Revenue Agent Rusiecki used to calculate Noreault's income already accounted for alleged expenditures for narcotics. If the IRS followed the plaintiff's procedure, the income would have cost of goods sold deducted from it twice.

## Discussion

The court's jurisdiction over this action lies in 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7429(b). Section 1346(a)(1) provides that the United States District Court shall have original jurisdiction over any civil action against the United States that alleges wrongful tax assessment by the IRS. Section 7429(b) provides taxpayers with judicial review of IRS assessments made pursuant to sections 6851, 6861 or 6862 of Title 26 of the Internal Revenue Code of 1954. Section 6851 provides for the termination assessment that the IRS exercised in the instant case.

Congress provided clear guidelines pertaining to the scope of review by the district court under Section 7429. The statute provides that:

> The district court shall determine whether or not—

---

**2.** The evidence left the court unclear about whether the Sanyo product was a television or stereo.

(A) The making of the assessment under Sections 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(B) The amount so assessed or demanded as a result of the action taken under Section 6851, 6861, or 6862, is appropriate under the circumstances.

Congress, however, left it to the courts to determine what "reasonable (or appropriate) under the circumstances" means in each of the two tests. After a thorough examination of the "reasonable" standard, in the absence of any illuminating legislative history, the court in *Loretto v. United States*, 440 F.Supp. 1168 [41 AFTR2d 78–301] (E.D.Pa.1977) concluded "that 'reasonable under the circumstances' means something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.' " Id. at 1172. See also *Penner v. United States*, 582 F.Supp. 432, 434 [54 AFTR2d 84–5598] (S.D.Fla.1984) (agreeing with *Loretto*).

■ The court's review of the termination assessment pursuant to Section 7429(b) is de novo and allows no presumption of correctness to either the district director's or the Secretary of the Treasury's determination. *Loretto*, 440 F.Supp. at 1171–72. See also *Johnson v. Commissioner*, 468 F.Supp. 461, 464 [43 AFTR2d 79–861; 44 AFTR2d 79–5159] (M.D.Fla. 1979). In conducting this review, the court may consider not only evidence that was available to the IRS at the time of the termination assessment, but also evidence which has come to light since that time. See *Penner*, 582 F.Supp. at 434; *Johnson*, 468 F.Supp. at 464; *Lace v. United States*, 45 AFTR2d 80–367 (D.Vt.1979).

Section 7429(g)(1) plainly places the burden of proving reasonableness of the termination assessment upon the government. In contrast, the burden of proving the inappropriateness of the *amount* of the assessment falls on the plaintiff/taxpayer. 26 U.S.C. § 7429(g)(2). To trigger the taxpayer's burden, section 7429(g)(2) places upon the government the burden of producing "a written statement which contains any information with respect to which [the Secretary's] determination of the amount assessed was based." 26 U.S.C. § 7429(g)(2). Thereafter it becomes the taxpayer's burden to prove the appropriateness of the amount. Id.

In applying the law as outlined above, this court finds the government has met its burden of proving that the making of the termination assessment was reasonable. The court also concludes that the taxpayer has carried his burden of proving that the amount of the assessment was inappropriate and orders that the assessment be abated in part. 26 U.S.C. § 7429(b)(3); *Penner*, 582 F.Supp. at 436.

### a. Termination Assessment

■ The termination assessment provides the IRS with a mechanism to protect revenues believed due from a taxpayer with "designs to do an act which would tend to prejudice proceedings to collect the income tax for ... [the current year] ... unless such proceedings are brought without delay." Treas.Reg. § 1.6851–1(a)(1). The IRS may make the termination if any of the following three criteria are met:

(i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself.

(ii) The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.

(iii) The taxpayer's financial solvency is or appears to be imperiled.

Treas.Reg. § 1.6851–1(a)(1). See *Penner*, 582 F.Supp. at 434.

The government bases its grounds for the termination assessment on the second criterion; the taxpayer's apparent designs to conceal assets from the government.[3] This court finds that the government acted reasonably under the circumstances in issu-

---

**3.** See supra note 1.

ing the notice of termination assessment. Testimony reveals that Noreault had been indicted for narcotics distribution and dealt with cash in his alleged narcotics activities. He also invested large amounts of cash in real estate. In addition, the taxpayer willfully concealed the existence of approximately $34,000 in the safe deposit box, as well as his ownership of a partnership interest in property in Elmore, Vermont. Noreault also failed to file income tax returns reporting any income for the tax years 1983 and 1984. Moreover, he misrepresented that the true sources of his income were from a car business and the stock market.

All these factors make the government's action more than reasonable under the circumstances. Noreault's actions indicate not only a willingness to conceal assets from the government but also a practice of having done so. This gives the IRS sufficient reason to find that Noreault "design[ed] quickly to place his ... property beyond the reach of the government." 26 U.S.C. § 6851(a)(1).

Noreault contends that because he recorded nearly all his assets under his own name he demonstrates a lack of concealment. Noreault's deliberate failure to provide the court at the detention hearing with knowledge of his $34,000 cash "nest egg" belies this assertion.

The court finds that the government satisfied its burden of proving that the termination assessment was "reasonable under the circumstances." 26 U.S.C. § 7429(g).

b. Amount of Assessment

■ Our conclusion that the termination assessment was reasonable under the circumstances leads the court to the second issue: the reasonableness of the *amount* of the assessment. In examining the amount of the assessment, this court does not decide the ultimate tax liability for the taxpayer. *Penner,* 582 F.Supp. at 434; *Johnson,* 468 F.Supp. at 464. Instead, the court must decide whether the amount assessed is reasonable under the circumstances. 26 U.S.C. § 7429(b). In attempting to meet his burden of proof that the amount of the assessment was inappropriate, the plaintiff offers two tenable arguments.[4]

First, he contends that several of the unidentified deposits in his bank accounts were actually identifiable from non-taxable sources. Therefore, he alleges that those amounts should not be included in the net profit as derived by the Source and Application Funds Method. This court disagrees. Plaintiff's accountant reviewed plaintiff's bank accounts and merely arrived at a different result than Revenue Agent Rusiecki. This evidence fails to convince the court that the government's calculation of plaintiff's net profit for the first four months of 1985 was unreasonable. Because this argument fails to establish that the government's result was unreasonable under the circumstances, 29 U.S.C. § 7429(b), plaintiff falls short of his burden of proof on this ground. See 29 U.S.C. § 7429(g)(2).

Second, plaintiff alleges that the assessment unreasonably included the coin and gun collections as assets derived from 1985 income. Section 6851(a) provides for an assessment based on income earned in the current (1985) tax year only. 26 U.S.C. § 6851(a).[5] If plaintiff purchases the items in the gun and coin collections prior to 1985, then clearly he did not purchase them with 1985 income. Plaintiff offered convincing testimony that he had accumulated both these collections over a period of several years. Furthermore, it is the nature of collections that the objects which make them up are frequently acquired over substantial periods of time. It is more reason-

---

4. As the court discussed above, plaintiff also alleges that cost of goods sold, i.e. narcotics, should be deducted from the net profit. As this court already stated, the government's calculation method already accounts for cost of goods sold. Therefore, the argument bears no further consideration.

5. Revenue Agent Rusiecki testified that if plaintiff purchased the items in the gun and coin collections prior to 1985, then the value of such items was not properly included in calculating the termination assessment.

able to assume that this was so in this instance than that the collection was purchased intact or over just a few months. The court may consider evidence revealed after the assessment in evaluating the reasonableness of the assessment even if the IRS did not use such information in making its assessment. See *Penner*, 582 F.Supp. at 934; *Johnson*, 468 F.Supp. at 434. We have no hesitancy in agreeing with plaintiff's position that he purchased the items in the collections with pre-1985 income.

Therefore, this court finds that the government acted unreasonably in including the gun and coin collections in the value of net income for 1985. The $16,-787.50 value of the guns and ammunition and the $4,428.88 value of the coin collection shall be deducted from $78,211.69 income upon which the government calculated the $33,930.75 termination assessment.

### Conclusion

In sum, this court concludes that the government has satisfied its burden of proof that the termination assessment is "reasonable under the circumstances." The court, however, also concludes that the taxpayer has met his burden of proof that the amount is inappropriate.

The court Orders that the Secretary of the Treasury redetermine plaintiff's income for the first four months of 1985 consistent with this Opinion and recompute the termination assessment accordingly.