Vickie S. EVANS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

James L. EVANS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. NA 87–122–C, NA 87–123–C.

United States District Court,
S.D. Indiana,
New Albany Division.

July 17, 1987.

Findings of Fact and Conclusions of
Law, Sept. 9, 1987.

On Motion to Vacate Judgment,
Oct. 2, 1987.

David A. Lewis, Jeffersonville, Ind., D. Kevin Ryan, Louisville, Ky., for plaintiff Vickie S. Evans.

Joan Henderson, Jeffersonville, Ind., Thomas G. Karageorge, Louisville, Ky., for plaintiff James L. Evans.

Jeffrey L. Hunter, Office of the U.S. Atty., Indianapolis, Ind., David M. Wise, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ENTRY

BARKER, District Judge.

The plaintiffs Vickie S. Evans and James L. Evans filed complaints on June 5, 1987, seeking judicial review of the jeopardy tax assessments made on April 2, 1987, by the Internal Revenue Service against the plaintiffs pursuant to 26 U.S.C. § 7429 (1982). This court held a hearing on the matter on July 2 and July 6, 1987, and following the hearing ordered the parties to submit proposed post-hearing findings of fact and conclusions of law within ten days. Because the purpose of section 7429 is to grant relief quickly in cases where the IRS has overstepped the bounds of reasonableness, the court expedited the hearing and its issuance of this entry. Detailed findings of fact and conclusions of law will be made and entered following the court's receipt of the parties' proposed findings and conclusions.

The court, having considered the evidence presented at the hearing and having reviewed the pleadings, briefs, and affidavits on file, now concludes that the jeopardy tax assessments were reasonable and that the amounts of the assessments were appropriate under the circumstances. Accordingly, the jeopardy tax assessments will not be abated, and judgment is entered in favor of the defendant United States of America.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These consolidated actions have been brought by the taxpayers, Vickie S. Evans and James L. Evans, seeking a judicial review under 26 U.S.C. § 7429 of the jeopardy tax assessments made against them on April 2, 1987. A hearing was held on these actions in Indianapolis on July 2 and 6, 1987.

The court entered its ruling sustaining the jeopardy tax assessments as reasonable and appropriate as to the amounts on July 17, 1987, with detailed findings of fact and conclusions of law to follow after proposed findings and conclusions were submitted by the parties. In accordance therewith, the court enters the following findings of fact and conclusions of law.

### Findings of Fact and Conclusions of Law

1. The plaintiffs James L. Evans and Vickie S. Evans are husband and wife. During the tax years of 1980 through 1985, Mr. and Mrs. Evans were involved in several family businesses, Crackup Salvage & Sales, Inc. (selling airplane parts), Nite–Flight Co. (airplane banner advertising) and rental of commercial property in Louisville, Kentucky. They filed joint federal income tax returns for the year 1980 through 1985, reporting taxable income in the following amounts:

| | |
|---|---|
| 1980 | $ 9,727.44 |
| 1981 | 21,496.98 |

| | |
|---|---|
| 1982 | $ 34,443.07 |
| 1983 | 15,743.95 |
| 1984 | 21,000.50 |

2. On April 2, 1987, the IRS District Director for Louisville, Kentucky, made jeopardy deficiency assessments against James and Vickie Evans relative to alleged unreported income deriving from alleged drug trafficking profits during 1980 through 1985. These assessments for tax, interest, and penalty were in the following amounts:

| | |
|---|---|
| 1980 | $ 171,179.58 |
| 1981 | 109,804.94 |
| 1982 | 1,303,797.62 |
| 1983 | 745,410.03 |
| 1984 | 398,543.00 |
| 1985 | 50,000.00 |

The assessment as to 1985 was made only against James L. Evans.

3. Upon making the jeopardy tax assessments, the IRS filed tax liens on the Evanses' New Albany, Indiana, residence and adjacent lots, commercial buildings and some vacant lots in Louisville, Kentucky, and a lot on Rough River Lake in Kentucky. The IRS levied upon two aircraft used in the family businesses and approximately $7,000.00 from the Evanses' bank accounts.

4. The amounts of the deficiencies, and the decision to make jeopardy assessments under 26 U.S.C. § 6861 were based upon the determination of the IRS special agent who conducted a criminal tax investigation of the Evanses.

5. In 1983 or 1984, James L. Evans became the target of Drug Enforcement Agency (DEA) investigations relative to at least two Kentucky- and Indiana-based networks involved in the importation, transport, and distribution of marijuana and cocaine.

6. The foregoing investigations were conducted through the use of government informants, and through interviews with alleged participants in the foregoing drug trafficking networks.

7. The foregoing investigations resulted in four separate grand jury indictments of James L. Evans on drug trafficking-related charges filed in the United States District Court for the Western District of Kentucky relative to activities conducted between 1981 and 1985: (1) on December 3, 1985, James L. Evans and one other person were indicted for conspiring to possess with intent to distribute and distribute in excess of 1,000 pounds of marijuana (hereinafter, referred to as "Indictment No. 1"); (2) on March 4, 1986, James L. Evans was named in three counts of a 38-count indictment naming 31 defendants (the three counts included two counts of conspiring to possess with intent to distribute and distribute marijuana and cocaine, and one count of conspiring to import marijuana into the United States) (hereinafter referred to as "Indictment No. 2"); (3) on August 4, 1986, James L. Evans was named in all ten counts of an indictment charging Evans and 20 others with importing via Belize in excess of one ton of Columbian cocaine, and conspiring to possess and distribute such cocaine, together with importing and conspiring to possess and distribute over one ton of marijuana (hereinafter referred to as "Indictment No. 3"); (4) on March 3, 1987, James L. Evans was named in all seven counts of an indictment, count I of which charged him with engaging in a continuing criminal enterprise by virtue of his role as the organizer, supervisor, and manager of an organization engaged in a continuing series of violations of statutes prohibiting the importation of and the conspiracy to possess and distribute marijuana and cocaine (hereinafter referred to as "Indictment No. 4"). The remaining six counts of Indictment No. 4 were for federal tax evasion.

8. In or around October, 1985, James L. Evans left the United States. While out of the United States, James Evans travelled on a forged passport and forged Florida driver's license in the name of Vance Bo Owens. James L. Evans remained out of the country for at least nine months after the first criminal indictment was filed, and in communications to the DEA through his attorney, indicated that he intended to remain out of the country. Based upon the information obtained by DEA, it appears

that James Evans spent this period of time in Mexico and Costa Rica.

9. In 1985, at or shortly before the time James L. Evans left the country, he gave his wife Vickie Evans a power of attorney authorizing her to handle all his business affairs. Shortly after James Evans left the country, pursuant to this power of attorney, Vickie Evans divested James L. Evans of his interest in a Louisville, Kentucky, tavern known as The Brewery. She also sold several parcels of jointly-owned land adjoining their residence.

10. Prior to and after James L. Evans' departure, Vickie Evans maintained the books for the aircraft salvage business and the banner display company that she and James L. Evans owned.

11. On November 8, 1985, DEA agents searched the Evanses' residence and the business premises of Crackup Salvage & Sales, Inc. The search did not produce any drugs, drug paraphernalia, large amounts of cash, or records of drug transactions. The search did produce several clear plastic tubes with some markings on them.

12. DEA investigators theorize on the basis of informant information that the clear plastic tubes were utilized by Mr. Evans to secret away cash by burying the tubes containing currency obtained from illegal drug operations. However, Mrs. Evans testified that these clear plastic tubes had only been used by Mr. Evans for fish breeding purposes in a lake on the Evanses' property. She also testified that, contrary to assertions by government agents that large quantities of marijuana were dried in the Evanses' garage and currency was counted out inside their residence, she had never seen any drugs or cash on the residential or business premises.

13. In December 1985, Mrs. Evans met with DEA Agent Richard W. Sanders to discuss a method by which she could continue to operate the family businesses and eventually buy her house from the DEA (if it were eventually seized by the government for its use in drug activities). Mrs. Evans contacted Mr. Sanders on a periodic basis thereafter regarding the business operations until March 1986 when Mr. Sanders advised her there was no reason for her to continue calling him on a regular basis.

14. In September 1986, James L. Evans was arrested by Mexican authorities and turned over to authorities of the United States in San Diego, California. He has been incarcerated since that date and is currently residing in the Jefferson County Jail in Louisville, Kentucky.

15. On May 11, 1987, James L. Evans was convicted of the three counts against him in Indictment No. 2. The other three indictments naming him are still pending.

16. In 1985 or 1986, agents for the DEA informed a special agent for the IRS Criminal Investigation Division of the aforementioned, ongoing investigations. After receiving this information, the IRS special agent commenced a tax fraud investigation of James L. and Vickie L. Evans in conjunction with the ongoing DEA investigation. The IRS special agent conducted his investigation primarily through interviews with alleged participants in the aforementioned alleged drug trafficking network.

17. Based upon the interviews with such persons, the special agent determined that James L. Evans had been at the center of a drug importation and trafficking network established to (1) import foreign marijuana from Jamaica and Belize, and distribute both foreign and domestic marijuana; and (2) to transport Columbian cocaine from Belize to Florida *via* Kentucky. The network consisted of six documented sources of supply, and middlemen, together with over 20 pilots, drivers, and dealers who operated largely at Evans' directions.

18. Relying upon the statements of informants which were independently corroborated by other informants, the IRS special agent documented James Evans' apparent role in 25 separate narcotic transactions which were made on his behalf between March 1980 and January 1985.

19. Taking into account the cost of goods sold and expenses, the special agent determined that James L. Evans had received unreported net profits for 1980 through 1982 from the aforementioned documented transactions as follows:

| 1980 | $ 285,000.00 |
| 1981 | 143,800.00 |
| 1982 | 1,293,000.00 |

He also determined that James L. Evans had received unreported gross drug related profits for 1983, 1984, and 1985 from the aforementioned documented transactions as follows:

| 1983 | $ 790,000.00 |
| 1984 | 456,250.00 |
| 1985 | 50,000.00 |

The special agent computed James Evans' unreported drug earnings by subtracting the cost of goods sold from gross receipts. No allowance was made for other expenses incurred by Mr. Evans in selling the drugs.

20. As a result of the foregoing criminal tax investigation, and as part of Indictment No. 4, on March 3, 1987, a grand jury indicted James L. and Vickie Evans on charges of criminal tax evasion under 26 U.S.C. § 7201 for failing to report such income on their joint 1980 through 1984 federal income tax return, and indicted James Evans alone for failing to report such income on his 1985 federal income tax return.

21. Based upon the information given to him, the special agent also determined the following:

a. that James L. Evans conducted all of his drug transactions in cash;

b. that James L. Evans retained no business records reflecting these transactions and routinely destroyed all written documentation reflecting these transactions;

c. that James L. Evans deliberately avoided depositing his drug earnings with local financial institutions, and would, instead, conceal the cash on the premises of his residence in metal underground compartments, or in waterproof poly-chloride vinyl pipes;

d. that James L. Evans often conducted transactions involving extremely large and bulky amounts of cash at his residence, and at times used the automobile of his wife Vickie Evans to facilitate such transactions;

e. that James L. Evans would dry large amounts of marijuana in the family garage;

f. that there is reason to believe that James L. Evans has converted significant amounts of money into gold.

g. that James L. Evans frequently travelled to other nations in furtherance of his drug trafficking business, and had and may still have numerous alien contacts in the drug trafficking business.

22. To date, the IRS's investigations have identified the following assets as belonging to the plaintiffs:

a. their residence in New Albany, Indiana;

b. three rental properties in a relatively undesirable area of Louisville, Kentucky;

c. a lakefront cabin in Kentucky;

d. approximately $7,000.00 on deposit in a joint bank account;

e. two small aircraft used in the aerial banner display business.

23. The Evanses presented no evidence establishing that the amounts of the jeopardy tax assessments were inappropriate.

24. Any conclusion of law stated below, to the extent that it constitutes a finding of fact, is herein incorporated by reference as an additional finding of fact by the court.

*Conclusions of Law*

1. This court has jurisdiction over the consolidated actions pursuant to 26 U.S.C. § 7429 (1982) and 28 U.S.C. § 1346(e) (1982). Plaintiffs have complied with all the jurisdictional prerequisites of section 7429.

2. Section 7429(g) provides that the government has the burden of proof as to the reasonableness of any jeopardy tax assessment, and the taxpayers have the burden of proof on the issue of the appropriateness of the amount of the assessment. If the government fails to meet its burden of proof as to the reasonableness of the jeopardy tax assessment, the assessment must be abated and it is not necessary for the court to review the appropriateness of the amount of the assessment. *Johnson v. Commissioner*, 468 F.Supp. 461 (M.D.Fla.1979).

3. The standard of proof required by the government on the reasonableness of the making of jeopardy tax assessments is something more than "not arbitrary and capricious" and something less than "supported by substantial evidence." *Loretto v. United States*, 440 F.Supp. 1168, 1172 (E.D.Pa.1977). Hearsay evidence is admissible because of the summary nature of the proceedings which makes the rules of evidence inapplicable. *Haskin v. United States*, 444 F.Supp. 299, 304 (C.D.Cal.1977).

■ 4. The jeopardy tax assessments made by the IRS on April 2, 1987, were reasonable under the circumstances. The IRS was reasonable in its belief that James L. and Vickie S. Evans had the capacity and likely intent to place assets beyond the reach of the United States. Mr. Evans has had a history of hoarding large sums of cash. In addition, the Evanses own two aircraft that could be used to transport cash or other assets to unknown locations. The aircraft themselves could easily be concealed. Even though the real estate which is jointly owned by the Evanses could not be moved, dissipated, or concealed, it could be converted into cash, which itself, of course, could be concealed or dissipated. Mrs. Evans, with the power of attorney from her husband has on prior occasions liquidated some of their jointly-held real estate following her husband's flight from this country, including his interest in a Louisville, Kentucky, tavern and several parcels of jointly-owned land adjoining their residence.

5. The reasonableness of IRS's belief that it was in jeopardy of collecting taxes due and owing for the years 1980 through 1985 is further buttressed both by the nature of the source of the Evanses' income (narcotics trafficking) and the aggregated amount of the deficiencies in reported income ($2,728,736.01). These circumstances reasonably indicate that the Evanses, in all likelihood, still have available to them the kind of network of people to assist them in hiding or disposing of these funds as was available when they acquired monies of this magnitude. The court heard evidence of such a wide-ranging, multi-partied, multi-faceted conspiracy. The facts that the taxpayers failed to disclose to IRS their true income in these large amounts over a five-year period of time and also failed to pay the required tax further underscore the reasonableness of IRS's actions and belief.

■ 6. James L. Evans' present incarceration is not a sufficiently persuasive circumstance to overcome the reasonableness of IRS belief that he is still able to influence, if not control, his wife's activities or perhaps other co-conspirator's activities with respect to the use of the monies earned from drug dealings. Nor does it entirely refute the fact that he may retain the wherewithal to post bond quickly on his criminal cases and flee the jurisdiction and/or personally dispose of the secreted funds and business holdings.

7. The Evanses offered no evidence from which the court could conclude that the amount of the jeopardy assessments against the plaintiffs on April 2, 1987, was manifestly incorrect, which causes the court to conclude the amounts of the assessments were appropriate under the circumstances.

8. The assessments shall stand. The complaint warrants dismissal.

9. Any finding of fact stated above, to the extent that it constitutes a conclusion of law, is herein incorporated by reference as an additional conclusion of law by the Court.

## ON MOTION TO VACATE JUDGMENT

Following the court's entry of judgment on July 20, 1987, but prior to its entry of the findings of fact and conclusions of law in support of the judgment, plaintiffs filed their joint motion to vacate judgment, pursuant to Rule 59(e), Fed.R.Civ.P., which motion is now before the court. Plaintiffs seek to have the court reconsider its denial of the motion to abate the jeopardy tax assessment on the grounds that IRS had not complied with the statutory requirements of written notice to the taxpayers.

Title 26, U.S.C. § 7429(a)(1), requires that within five days after the day on which the jeopardy tax assessment is made by IRS,

the Secretary of IRS is to provide the taxpayer with a written statement of the information upon which the Secretary has relied in making such assessment.

The notices which the Secretary provided to plaintiffs in accordance with its duty under section 7429(a)(1) stated in applicable part as follows:

Under Section 6861 of the Internal Revenue Code you are notified that I have found you were indicted for operating a continuing criminal enterprise. Further I have found you to be designing quickly to place your property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons, thereby tending to prejudice or render ineffectual collection of income tax for the taxable period ending 12/31/80 thru the period ending 12/31/84. Examples of such activity tending to prejudice or render ineffectual the collection of income tax include, but are not limited to, operating an illegal drug business solely in cash, keeping no records of the illegal business transactions and avoiding the use of banks, secreting large amounts of cash, and fleeing the country using false identification and documents. Accordingly, based on information available at this time, I have approved assessment of tax and additional amounts determined to be due as reflected in the attached computations:

| TAXABLE PERIOD | TAX | PENALTY | INTEREST |
|---|---|---|---|
| 1980 | 114,131.05 | 57,048.53 | 122,194.52 |
| 1981 | 73,203.29 | 36,601.65 | 62,227.40 |
| 1982 | 644,604.34 | 659,193.28 | 405,839.22 |
| 1983 | 385,143.18 | 360,266.85 | 174,847.48 |
| 1984 | 214,197.93 | 184,345.91 | 59,243.63 |

Under Section 7429 of the Internal Revenue Code, you are entitled to request administrative and judicial reviews of this assessment action.

In addition, the notices set out the appellate process available to plaintiffs and attached the schedules of liability.

The taxpayers contend that this notice was inadequate because it failed to disclose the "actual facts" upon which the assessments were made. The government has responded by pointing out that at the time of the jeopardy assessment notices, James Evans was the subject of four, separate multi-count indictments, including the one mentioned in the notice itself. One of the indictments charged James Evans with engaging in a continuing criminal enterprise; another indictment charged James and Vicki Evans with criminal tax evasion. The government maintains, therefore, that pursuant to ordinary discovery, the taxpayers had been notified fully as to the basis for the jeopardy assessments.

In addition, the government argues that no requests have ever been forthcoming from the plaintiffs to IRS seeking additional information. In their complaints in this action, no mention is made of alleged insufficiencies in the notices; rather the plaintiffs have proceeded to challenge the assessments on the merits. Only on the morning of trial, did plaintiffs raise an issue regarding alleged inadequacies in the form of the notices, and the fact that the court resolved the issues by recessing the hearing and requiring the government to make full disclosure of the evidence on which it was relying at the hearing to substantiate the jeopardy assessments to plaintiffs' counsel, in any event, remedied any alleged insufficiencies in the notices.

Plaintiffs respond to the government's arguments by repeating that the notices are inadequate on their face and as such they constitute insufficient notice which has deprived them of their due process rights and, more particularly, their full opportunity to resist the assessments.

The purpose of the notice requirement, as evidenced by the legislative history of section 7429, was to allow the taxpayer and IRS to exchange information either for the

purpose of resolving any disputes or to facilitate the court proceeding. (Senate Finance Committee Report, S.Rep. No. 94–938 (Part II), 94th Cong.2d Sess., 365–66 (1976); U.S.Code Cong. & Admin.News 1976, at 2897, 3795.)

Stated otherwise, "[t]he purpose of section 7429(a)(1) is 'to alert the taxpayer to any basis for contesting the assessment.'" *Barry v. United States*, 534 F.Supp. 304, 308 (E.D.Pa.1982), citing *Loretto v. United States*, 440 F.Supp. 1168, 1175 (E.D.Pa. 1977).

■ Based on a review of the notice itself, coupled with the fact that substantial information had been provided to the taxpayers as discovery in the four criminal indictments pending at the time of the assessment and out of which facts the jeopardy tax assessment itself emanated, and in light of the steps taken by the court after the commencement of the hearing on the assessment abatement petition to recess the proceedings to allow full disclosure to be made to the taxpayers, the court concludes that taxpayers had sufficient notice of the basis for the assessment to allow them to defend against it and to comport with the statutory requirements.

■ Three points warrant elaboration. First, plaintiffs' complaints challenge the jeopardy tax assessments by IRS as being "not reasonable or substantially justified under the circumstances and the amount assessed and demanded is not appropriate under the circumstances, and this court should immediately order the abatement of said jeopardy assessment." (Paragraph 4) This allegation, common to both complaints, seeks a review on the merits, and does not challenge the form of the notice as a basis for having the assessment abated. Whatever may have occurred in the administrative process with respect to challenging the adequacy of the notice, no issues of that nature were preserved by plaintiffs when they filed their respective, but identical complaints. To that extent, those claims can properly be deemed waived.

Secondly, at the commencement of the trial on these complaints, despite the apparent waiver of such claims of inadequacy, the court examined the notice to determine its adequacy and found that when considered alone, without regard to any collateral information which the government may have provided, such as the discovery in the pending criminal indictments against James Evans, the notices did in fact contain little more than conclusions. Having made that determination, the court observed on the record that it could "either abate the assessment and thereby start the wheels turning for IRS again, because they will just file another one and go through the administrative hoops, or I can continue this hearing and give the parties time to make the required exchange of information." Record at 4. This judge went on to find as follows:

> It seems to me that, since the notice was issued on April 2, 1987, and here we are on July 2nd at the time of this hearing, and no other notice has been given by the plaintiffs to IRS that they wanted discovery, they were entitled to discovery, they sought it and didn't receive it, that the plaintiffs don't stand before the court in a position entitling them to an abatement of the assessment. Therefore the court is going to continue this hearing to allow the parties to discuss and consult with one another and have the required opportunity for discovery.

Record at 4–5.

The court recessed the hearing at 10:45 a.m. and reconvened at 2:00 p.m. In response to the court's inquiry, the lawyer for the government indicated that he had made disclosures to the plaintiffs in compliance with section 7429(a). Though plaintiffs' lawyers continued to contest the adequacy of the disclosures, saying that the information disclosed did not provide any information demonstrating that plaintiffs had concealed or were "concealing, dissipating or transferring assets, or that they (were or) are designing to quickly place property beyond the reach of the government by concealing assets, dissipating assets, or transferring assets" (Record at 9, citing the requirements of section 7429), those objections were found to apply to the merits of the petition, not to the adequacy

of the notice or the sufficiency of IRS' compliance with the requirement to provide information. In fact, in response to the court's question, "So as far as you know the government has disclosed to you all of the information on which it's relying," one of the lawyers for plaintiffs stated, "As far as we know." Record at 10. Moments later, this colloquy occurred between the court and Mr. Ryan, counsel for Mr. Evans:

> The Court: ... I am asking preliminary questions here now. I am trying to find out whether to go ahead with the hearing, whether or not after we recessed this morning and prior to the court's taking the bench five minutes ago that there had been those disclosures between the lawyers that were required by statute. And so you have answered my question that as far as you know you have gotten everything that they are relying on.
>
> Mr. Ryan: Yes, judge, we have got everything.

It is true that Mr. Karageorge, counsel for Mrs. Evans, thereafter asked the court to require disclosure of additional information by the government attorney in the nature of greater evidentiary detail than that which was provided during the court-imposed recess, to which the government objected on the grounds of confidential informant privileges, and the court sustained the objection. Despite Mr. Karageorge's desire for more detail, the court found that the information which provided the base for the jeopardy tax assessment by IRS had been disclosed prior to the commencement of evidence at this trial. In any event, plaintiffs never once requested a continuance for purposes of securing additional information or to prepare more fully to defend against the information on which the government was relying. On that ground, as well, objection to the notice is deemed waived by plaintiffs.

■ Finally, plaintiffs have never specifically shown any prejudice suffered by them as a result of inadequacies in the notice of jeopardy tax assessment. The detail provided in the notice in the case at bar, though sparse, is considerably greater than that criticized in *DeLauri v. United States*, 492 F.Supp. 442 (W.D.Texas 1980) and *Fidelity Equipment Leasing Corp. v. United States*, 462 F.Supp. 845 (N.D.Ga. 1978). This court's criticism of the summary, conclusory nature of the notice sent to these plaintiffs, does not compel a conclusion that plaintiff suffered prejudice when that notice was accompanied by the discovery in the related criminal cases, as well as the discovery in this case prior to the commencement of this trial. In its post-trial briefs and other submissions, plaintiffs have never cited any such harm actually to have occurred.

For all the foregoing reasons, the court finds no basis to vacate its earlier judgment. The motion to vacate is accordingly DENIED.